TOLEDO BAR ASSOCIATION *v.* HICKMAN.

[Cite as *Toledo Bar Assn. v. Hickman,* 119
Ohio St.3d 102, 2008-Ohio-3837.]

(No. 2008–0398—Submitted May 6, 2008—Decided August 6, 2008.)

_____

**Per Curiam.**

{¶ 1} Respondent, Gregg D. Hickman of Toledo, Ohio, Attorney Registration No. 0020032, was admitted to the Ohio bar in 1978. On December 28, 2005, we suspended respondent for one year with six months stayed for neglecting two personal-injury matters and lying to his clients about his neglect. *Toledo Bar Assn. v. Hickman,* 107 Ohio St.3d 296, 2005-Ohio-6513, 839 N.E.2d 24.

{¶ 2} During that suspension, the relator, Toledo Bar Association, discovered other misconduct and charged respondent with additional disciplinary violations. In that second case, we suspended respondent for one year, the suspension to be served consecutively to his first suspension, for taking a retainer when there was no legally viable claim and for neglecting the criminal defense of a client. *Toledo Bar Assn. v. Hickman,* 113 Ohio St.3d 164, 2007-Ohio-1256, 863 N.E.2d 169.

{¶ 3} On June 11, 2007, relator filed a complaint charging respondent with additional violations of the Code of Professional Responsibility. Respondent stipulated to several of the violations set forth in the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing. Based on the stipulations and other evidence, the panel made findings of fact, conclusions of law, and a recommendation, which the board adopted.

{¶ 4} The board recommends that we permanently disbar respondent from the practice of law. We adopt the board's findings of misconduct and the recommended sanction.

## Misconduct

### Mottmiller Grievance

{¶ 5} In 2003, Edward Mottmiller paid respondent a retainer to investigate a possible forged will, of which Mottmiller would have been a beneficiary. Respondent made misrepresentations to Mottmiller about work that he was performing on Mottmiller's behalf. In 2005, respondent told Mottmiller that a pretrial hearing had been scheduled and that a trial date was set for August or September 2005. In fact, there was no pretrial or trial date scheduled. Respondent also told Mottmiller that he had filed for discovery, which was also not true.

{¶ 6} As to the Mottmiller grievance, respondent admitted and the board found that respondent had violated DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board also found that respondent had violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter).

### Roby Grievance

{¶ 7} On May 10, 2006, Rik Roby paid respondent a $1,500 retainer to represent him in a domestic relations matter. Although respondent told Roby that he was suspended from the practice of law at that time, he also told Roby that his suspension was about to terminate and that he would be reinstated in June or July 2006. This was not true, as respondent was aware of additional grievances pending against him that would likely prevent his reinstatement. In fact, two days after respondent accepted Roby's check, respondent attended a disciplinary hearing on those additional grievances. At that hearing, respondent stipulated to the charged misconduct and was informed that the hearing panel would recommend a one-year suspension in addition to the six months he was already serving. Yet respondent did not inform Roby that he would not be reinstated, and he did not refund Roby's retainer.

{¶ 8} Respondent deposited the $1,500 into his client trust account and agreed to transfer the money to Robert Woodley, an attorney that respondent had occasionally worked with, once Woodley started to represent Roby. Respondent did not pay Woodley any money.

{¶ 9} Thereafter, Roby tried to contact respondent several times, but respondent avoided Roby's calls. Roby finally filed a grievance seeking a refund of his retainer. In a written response to the grievance dated August 27, 2006, respondent stated that Roby's retainer was still in his client trust account. However, respondent's client trust account had dropped below $1,500 on May 26, 2006, and never again rose to that level. In fact, on August 27, 2006, there was only $32.36 in the account.

{¶ 10} Respondent stipulated and the board found that respondent had violated DR 6–101(A)(3), 3–101(B) (prohibiting a lawyer from practicing law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction), and 9–102(A) (requiring a lawyer to preserve the identity of funds and property of a client). Although not stipulated, the board also found that respondent had violated DR 1–102(A)(4).

### Stutzman Grievance

{¶ 11} In August 2005, Stanley Stutzman retained respondent in a divorce action. Respondent accepted a $12,500 retainer and placed it in his client trust account. Respondent then made numerous withdrawals from the account even though he had not earned those amounts. When the retainer was gone, respondent requested another $5,000, which Stutzman paid. One month later, respondent requested and received an additional $5,000 from Stutzman.

{¶ 12} Respondent received his first suspension from the practice of law six days later, and he advised Stutzman that he was withdrawing from the case. Respondent did not repay any of the money he received from Stutzman.

{¶ 13} In regard to the Stutzman matter, respondent stipulated and the board found violations of DR 2–106(A) (prohibiting a lawyer from charging or collecting a clearly excessive fee) and 9–102(B)(4) (requiring a lawyer to promptly pay or deliver upon request funds to which the client is entitled).

### Recommended Sanction

{¶ 14} In recommending a sanction, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 15} As aggravating factors, the board noted that respondent had two prior disciplinary cases in which respondent was found to have committed the same type of misconduct—client neglect, improper retention of client funds, and lying to clients—exhibited in this case. BCGD Proc.Reg. 10(B)(1)(a). See *Toledo Bar Assn. v. Hickman*, 107 Ohio St.3d 296, 2005-Ohio-6513, 839 N.E.2d 24, and *Toledo Bar Assn. v. Hickman*, 113 Ohio St.3d 164, 2007-Ohio-1256, 863 N.E.2d 169. The board found that respondent had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, failed to acknowledge the wrongful nature of his misconduct, and failed to make restitution to his clients, many of whom were vulnerable. BCGD Proc.Reg. 10(B)(1)(b), (c), (g), (h), and (i).

{¶ 16} In mitigation, the board found only that respondent had cooperated in the disciplinary process. BCGD Proc.Reg. 10(B)(2)(d).

{¶ 17} The panel recommended that respondent be permanently disbarred from the practice of law. The board adopted the panel's recommendation.

Review

{¶ 18} Respondent has not challenged the board's findings of misconduct or the recommended sanction. We have reviewed the board's record and its report, and we agree that respondent violated DR 1–102(A)(4), 2–106(A), 3–101(B), 6–101(A)(3), 9–102(A), and 9–102(B)(4). We also agree that the board's recommended sanction is appropriate.

{¶ 19} Accordingly, respondent is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., not participating.

_____

Michael Jilek and Chad M. Tuschman, for relator.

Gregg D. Hickman, pro se.