[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Cochran,* Slip Opinion No. 2018-Ohio-4.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4

MAHONING COUNTY BAR ASSOCIATION *v.* COCHRAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Cochran,* Slip Opinion No. 2018-Ohio-4.]**

*Attorneys—Misconduct—Making a false statement of fact or law to a tribunal— Committing an illegal act reflecting adversely on lawyer's honesty or trustworthiness—One-year suspension, stayed on condition.*

(No. 2017-1080—Submitted September 13, 2017—Decided January 2, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-052.

_____

**Per Curiam.**

{¶ 1} Respondent, Scott Robert Cochran, of Youngstown, Ohio, Attorney Registration No. 0065497, was admitted to the practice of law in Ohio in 1995. In November 2016, relator, Mahoning County Bar Association, charged him with violating the professional-conduct rules after a federal court sentenced him for a

misdemeanor offense. Relator and Cochran entered into a comprehensive list of factual stipulations, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the hearing evidence, the board found that Cochran engaged in some of the charged misconduct and recommended that we suspend him for one year, with the entire suspension stayed on conditions. Neither party has objected to the board's recommendation.

{¶ 2} Upon our review of the record, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 3} This disciplinary matter originated with Cochran's 2012 representation of Charles Muth. According to the parties' stipulations, Muth and another person fired gunshots into the former home of Mohd Rawhneh in late 2011. After the shooting, police investigated Muth's home and discovered a large marijuana-growing operation in the basement. State authorities later charged Muth with offenses relating to the shooting, and federal authorities charged him with offenses relating to the drug operation. Muth retained Cochran to represent him in the state case and Neal Atway, Cochran's law partner, to represent him in the federal proceeding.[1]

{¶ 4} Atway negotiated Muth's federal sentence down from a mandatory five-year prison term to a much shorter sentence. Muth, however, did not want to serve any prison time, and therefore Atway approached the government's attorney about finding a way to reduce Muth's sentence even further. The government's attorney indicated that Muth could obtain a better plea deal only by giving the government "usable information about public corruption" or if he could "give them a lawyer."

---

[1] Relator separately charged Atway with professional misconduct for his handling of Muth's case. *See* case No. 2017-1082.

2

**{¶ 5}** According to the parties' stipulations, Muth then began pleading with Atway and Cochran to "settle" any potential civil claims that Rawhneh could assert against Muth for his role in the shooting. As part of the settlement, Muth wanted a guarantee from Rawhneh that he would refrain from appearing at Muth's sentencing hearings. Atway and Cochran told Muth that they could not make any such guarantee and advised him against attempting to settle with Rawhneh. But Muth insisted, and Atway and Cochran discussed potentially transferring Muth's convenience store to pay for the settlement with Rawhneh.

**{¶ 6}** Unbeknownst to Cochran and Atway, Muth had been working with the FBI and recording his conversations with his attorneys. In addition, the FBI had wiretapped Rawhneh's phone and secretly recorded several communications between Rawhneh and Atway. The government ultimately claimed that Atway, Cochran, and Rawhneh were conspiring to extort money from Muth by leading him to believe that if Muth did not pay Rawhneh a settlement amount, Rawhneh would, among other things, offer damaging information at Muth's sentencing. In February 2014, the government formally charged Cochran with conspiracy to violate the Hobbs Act, obstruction of justice, making a false statement to law enforcement, and other offenses. Cochran pled not guilty to all charges. After a lengthy trial in February and March 2015, a federal judge declared a mistrial due to juror misconduct. The judge later acquitted Cochran on two counts, but the government indicated an intent to retry him on three remaining charges from the indictment.

**{¶ 7}** By October 2015, Cochran agreed to plead guilty to a new count in a supplemental information—misbehavior in the presence of the court in violation of 18 U.S.C. 401(1). Cochran admitted that he violated the statute by making two incomplete and misleading statements during his trial. For example, Cochran admitted that he misled the court by failing to disclose that he was present for a conversation in which Atway told Rawhneh that if Rawhneh came to Muth's federal sentencing, Rawhneh would "hopefully  * * * just sit in the back and keep

his mouth shut." At his disciplinary hearing, Cochran testified that he corrected the incomplete statements later in his trial, but he acknowledged that the statements were misleading when he made them.

{¶ 8} After Cochran pled guilty to violating 18 U.S.C. 401(1), the government dismissed all remaining charges from the original indictment. According to the parties' stipulations, a violation of 18 U.S.C. 401(1) is an unclassified offense, meaning that the sentencing judge has discretion to treat the offense as a misdemeanor or felony. In Cochran's case, the federal judge found that Cochran did not give the incomplete responses with an intent to obstruct justice and therefore treated the offense as a misdemeanor. The court sentenced him to two years of probation and imposed a $2,500 fine. Cochran paid the fine, and the court terminated his probation in July 2017.

{¶ 9} Based on his conviction, the board found that Cochran violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer) and 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness). We agree with the board's findings of misconduct.

## Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

### *Aggravating and mitigating factors*

{¶ 11} The board did not find any aggravating factors in this case. In mitigation, the board found that Cochran has no prior disciplinary record, he lacked a dishonest or selfish motive in that his incomplete statements were not made with an intent to obstruct the proceedings, he had a cooperative attitude toward the

4

disciplinary process, and criminal sanctions have been imposed for his misconduct. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (6). We also note that Cochran submitted numerous letters from local judges and attorneys attesting to his character and reputation, and the board noted that he demonstrated "genuine remorse."

*Applicable precedent*

{¶ 12} To support its recommended sanction, the board cited two cases involving attorneys who made false statements or offered false evidence to a tribunal.

{¶ 13} In *Toledo Bar Assn. v. DeMarco*, 144 Ohio St.3d 248, 2015-Ohio-4549, 41 N.E.3d 1237, an attorney made a series of false statements to a court about his possession of discovery materials. Specifically, he repeatedly represented to the court that he had never had the materials when, in fact, he had possession of the materials at one time. During one court proceeding, a witness truthfully testified that he had given the materials to the attorney and the attorney responded by threatening to take the witness "outside." *Id.* at ¶ 6, 14. We concluded that the attorney's dishonest and deceitful conducted warranted an actual suspension and therefore suspended him for one year, with the final six months stayed.

{¶ 14} The board concluded that Cochran's misleading statements here were less egregious than the attorney's repeated false statements in *DeMarco*. Specifically, the board noted that unlike the attorney in *DeMarco*, Cochran quickly corrected his misrepresentations through his own testimony. The board also noted that Cochran's incomplete statements were not made with the intent to obstruct justice. In contrast, we found that the attorney in *DeMarco* had a dishonest and selfish motive.

{¶ 15} The board also reviewed *Disciplinary Counsel v. Niermeyer*, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, in which an attorney filed a document with a falsified date stamp in an attempt to remedy his failure to meet a filing deadline. Despite the attorney's dishonest conduct, we sanctioned him with

a stayed one-year suspension due to the significant mitigating evidence in the case, including that the attorney had no prior disciplinary record, made immediate efforts to rectify the matter, cooperated in the disciplinary process, and accepted responsibility for his wrongful conduct. The board found that Cochran's misconduct was significantly similar to the misconduct in *Niermeyer*.

{¶ 16} Although Cochran's incomplete and misleading statements undermined the integrity of the adjudicative process, we agree with the board that his actions were not as egregious as the attorney's repeated misrepresentations in *DeMarco*. Rather, Cochran's behavior was more similar to the isolated incident of misconduct in *Niermeyer*. And considering the absence of any aggravating evidence and the presence of several mitigating factors, we conclude that a stayed one-year suspension, as we imposed in *Niermeyer*, is the appropriate sanction.

**Conclusion**

{¶ 17} For the reasons explained above, we adopt the board's recommended sanction, with one modification. The board recommended that we suspend Cochran for one year, with the entire suspension stayed on the conditions that he (1) comply with all conditions of his federal probation and (2) commit no further misconduct. Since the board filed its report, the parties supplemented the record with evidence showing that the federal court terminated his probation. Accordingly, we hereby suspend Cochran from the practice of law in Ohio for one year, with the entire suspension stayed on the condition that he commit no further misconduct. If Cochran fails to comply with the condition of the stay, the stay will be lifted and he will serve the full one-year suspension. Costs are taxed to Cochran.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

David C. Comstock Jr. and J. Michael Thompson, Bar Counsel, for relator.

John B. Juhasz; and Maro & Schoenike Co. and Lynn Maro, for respondent.

_____